And could we call the first case please? 14-3962 Ethan v. Garnell Chaffin. Would the attorneys presenting the argument please step forward and introduce yourselves and if you could spell your last name for the record please? My name is Stephen Richards, first name spelled with a P-H rather than a V. Last name is Richards, R-I-C-H-A-R-D-S. Good morning. Morning. Morning. Matthew Connors, C-O-N-N-O-R-S. Oh, that's so much easier than another name on the briefcase. Thank you very much. Morning, Mr. Connors. We are going to be allotting 15 minutes per side. We're going to try to stay reasonably close to that number. Mr. Richards, I assume you'd like to reserve a few minutes for rebuttal? I would like to reserve two minutes of the 15th for rebuttal. Very well. Whenever you're ready, you may proceed, sir. Thank you, Your Honors. My name is Stephen Richards and I represent the appellant in this case, Mr. Darnell Chafin. As you're aware, Mr. Chafin was convicted of armed robbery. He was sentenced to 21 years in the Illinois Department of Corrections. And the case boils down, I think, to two sort of groups of issues, which I'd like to discuss one after another. The first issue, or set of issues, is was plain error committed by the prosecution when they accused Mr. Chafin basically of intimidating the witness, who, as you know, took the stand and said that Mr. Chafin was not the person he robbed him. So do you think that one statement in and of itself was sufficient to state that the jury would have reached a different result without it? You think that alone was enough, because that's what we have to look at. Is that alone enough for the jury to say, well, clearly we've got to convict this guy? Yes. So you don't think all the evidence about the guy standing behind the other person, finding the $800 in his shoe, none of that was sufficient? It was all this one statement in the argument? Your Honor, it was extraordinarily prejudicial, and I'll tell you why. First of all, it wasn't one statement in closing argument. It was a theme that was first stated in opening close. It was repeated multiple times during the rebuttal close. It was the last thing that the prosecutor said to the jury, I submit that's intimidation, number one. Do you think it also came out in the prosecutor's questioning and the defendant? You bet. It came out because I would say, based on my number of pages, at least a third of his cross-examination with the defendant had to do with the defendant's possession of the discovery, how he kept it, where he kept it, who had access to it, et cetera. Well, did he have all that information? He did, but that was not relevant to any issue in the case. Well, wait a minute. What information did he have? Did he have the victim's address? According to his answer, he had the victim's home address. He said that he did not have the victim's work address, and he didn't have the girlfriend's address. Did he have his phone number? I believe he may have answered yes as to whether he had his phone number from the discovery. Did he have the name of the girlfriend? I don't believe he answered that one way or another, or he was questioning about that. All he had was the home address and the phone number? According to what he said when he was cross-examined. But you have to remember that the prosecution never introduced, as they could have, the actual discovery to show what he looked at. They just cross-examined him. He repeatedly said on his own testimony, didn't he, that he had the information? He had some information. Did he also say something about initially that he kept it locked in a safe, but then later he said it was lost? Correct. And did his mother testify at the trial? She did. And so when the prosecutor, and then the defendant also actually examined the complaining witness, didn't he? He did. Yes. And so that's kind of an unusual sort of setting, isn't it? It is an unusual setting, but let me sort of first address the first set of issues you raised and then address that issue. In terms of the possession of the discovery, first of all, step back a moment. In every case, every criminal case, go down to 26th Street, the defendants' attorneys are in possession of addresses, phone numbers, and other information they get from discovery. Yeah, but there's a lot of restrictions. You can't just hand it over to your client. You know that. You can't hand over the discovery to your client, but there's no direct restriction on sharing information in the discovery with your client and reviewing it with your client. That's not in Supreme Court rules, and there's no definite prohibition against it. Well, don't you think it's rather unusual, though, to have the person who has the information in hand to also be examining the victim who actually up until the point that he's examined by the defendant pretty much identified your client as the offender, but suddenly on the witness stand, he absolutely said no. Well, it wasn't suddenly, and that's a reasonable inference. What do you mean it wasn't suddenly? Well, put it this way. If the prosecution had known that the witness would have identified the defendant, why in the world did they not ask him when they were questioning him on direct? They probably did come into their office and say, I'm kind of afraid or something. Who knows? That's a maybe. That's totally speculation. The situation where the actual offender is, you know, within feet of him and cross-examining him is really kind of different than a defense attorney actually, you know, asking questions in court. It's really not a very common situation. Wouldn't you agree with that? It's not common, but the rule doesn't change. And if the rule did change What do you mean the rule didn't change? The rule is that you cannot accuse a defendant or a defense attorney, either one, of intimidating a witness. There is an accusation. There's an inference. But I don't see any direct accusation saying, isn't it true that you intimidated this victim and that's why his testimony significantly changed? It is an extremely damaging inference close to an accusation. He's still having close to an argument. Right. And what does the case law say? That inference is now? You can't do an inference, either? Sure. That was exactly what was the case in People v. Mullen. It was an inference and not an accusation. No. Yes, it was an inference. In Mullen, the prosecutor inferred that the witness's refusal to testify was because he was afraid of a vault in the back because of that threat in the witness. In People v. Fluker, it's the same thing. In neither of these cases do they say directly, and they know not to say directly, that, yeah, the defendant threatened the witness. The cross-examination as possession of discovery had no relevance except to raise that inference. The arguments. But isn't there some kind of an inference here? Because you have a person who actually made several identifications, and then he's confronted in court that day, and he suddenly says, no, that's not the guy. Well, if that were the case. Can you infer something from that? You're a seasoned defense attorney. How often have you actually ever seen this kind of Perry Mason-like change of identification? I mean, really, how often have you ever seen that happen? Well, it does happen, and in this particular instance. I didn't say it doesn't happen, Mr. Richards. All I said was how often have you ever seen anything like this particular case? I don't remember recalling reading really too many like this one. But the problem is that if your honors, if the position was that where a witness changes his testimony from what he had said previously, that you could raise an inference that he had changed it because of intimidation. No, that's not what I'm saying. I'm just saying we have a lot of things at play here. That's all. We have a change of an identification. We have a defendant acting as the examiner within feet of the complainant, and we have other evidence that supported the identification earlier. He was arrested immediately afterwards. He was identified at the scene. I think two different witnesses testified to that. There was money recovered from him. So there's kind of a big picture here. And so then we have, you know, this change of the identification, the fact of all these police reports being in his hand, having them available to him with the name and the address. And so it's not exactly just a simple, you know, case. But in any event, this was an error that wasn't preserved. No, it wasn't, and we think it should be addressed as plain error. But that was an error there can be no doubt. And the argument by the appellee is it's a reasonable inference, not of intimidation, that the defendant would have been able to contact Mr. Gordner or his girlfriend. So you have to – there's no evidence that the witness was threatened or frightened, unlike Cooper and Ray. He doesn't even say that in court ever. There's no evidence that Schaffiner's relatives contacted him, and there's no evidence that Schaffiner's relatives had threatened him. So it is error. Now, the next question is, is the case closely balanced, and should it be reversed on the basis of plain error? And the answer is yes. And I think that's clear just for the reasons that Your Honor said earlier. This was an unusual case because you have the complaining witness in court saying the defendant is innocent, period. Well, he didn't say he's innocent, did he? He said when asked whether this is the person that was behind you, he said no. How many times did he say that? No, actually what happened was, first of all, he's not asked that question by the prosecution. No, I'm talking about he's asked that by the defendant. He's asked that by the defendant, and the defendant gives him an open-ended question. He says, am I the guy that robbed you? And he says no. He's open-ended, perfectly free. He doesn't – it's not even leading. He says, am I the guy that robbed you? He says no. And that makes it closely balanced? That's one factor that makes it closely balanced. The other factor is the defendant testifies on his own behalf. The second factor is his co-defendant testifies on his behalf. The third factor is – Co-defendant? The co-defendant. Didn't he actually admit under oath that he had previously identified the defendant as a co-offender? In his testimony, didn't he say defendant? Under his sworn testimony, didn't he say defendant was the one that robbed the guy with him? He was impeached with what he said at the plea. So is that substantive or not? It was not introduced to – it was not introduced, I don't believe, to the jury. It was only introduced as impeaching. I don't believe the jury has given an instruction on substantive evidence. But in any event – What about the money and the previous identifications? I'll deal with both of those. All right. As to the first identification, it's not even clear it's an identification of Mr. Chapin because it was pointing to two people, Chapin and Velazquez, and saying that – But one was that according to the victim was the white guy who robbed him and the other one was the black guy who stood behind him, correct? The defendant was the black guy who stood behind him according to what the victim said at the time of the offense. Well, first of all, detailed statements are not admissible as statements of prior identification. It's just you're only supposed to identify the person. No, I get you. But you're saying that there wasn't – when they pulled over that car, correct me if I'm not remembering this right, but it was three Hispanics and one African-American, correct? That's correct. And then the victim had stated that it was one he qualified Velazquez as a white guy and then a black guy standing behind him. And then when the officers pulled over the car, the defendant was the only African-American, correct? Correct. He wasn't the only African-American, but the question asked of him, he was just – he pointed out and he pointed to – he didn't use the words African or white. There was no testimony that he said that in his statement of identification. What he did say – what the officer did say was that he pointed to Chapin and Velazquez and said that that was the person who had robbed him. But there's two people there, and that's it. So it is an ambiguous identification at best. The next identification is based upon a mugshot at the station. So the evidence is closely balanced. You have the actual victim saying, this is not the guy. You have Darnell Chapin saying, I am not the guy. You have one ambiguous possible identification. You have another one at the station, and that's it. And that's the money. It doesn't exactly match up with the money that was taken. So the evidence against Mr. Chapin – Don't you think they split some of the money? Isn't that how it usually works? The fact that he didn't have the whole 840 in his shoe is evidence that doesn't support the finding of guilty here? Split with who? Velazquez was also arrested. The missing money wasn't on him. I really don't know where the other money is. I'm just saying that it's very easy to infer that the money was elsewhere. And, you know, the fact that there was that amount of money in his shoe definitely goes in favor of evidence against him, not in his favor. Well, I think it's ambiguous at best because it doesn't match up. It's not unusual for people – To keep 740 or 80 in their shoes? In those neighborhoods? Yeah. Believe me, it's not unusual at all. There's nothing in the record that would support your inference. I don't think there's anything in the record that would support, with all due respect, Your Honor's inference that the money was split up. Well, I do think that there are multiple cases that would support the inference that the proceeds from the robbery were actually found in his shoe. I think there would be many cases that would support that. It's a very reasonable inference, though. Well, and the other point is that the number – the bills were not identified, which they could have been. There was no showing as to the bills matching the bills taken. And all the money, which could have been examined by the defense, was in fact put in a bank account so nobody could see it. So, again, that weakens the money available. Mr. Richards, is it possible that when the prosecutor was arguing in rebuttal about intimidation, that he was – rather than saying that the defendant had in fact intimidated him, that he was saying that the witness felt intimidated at the time, not necessarily because of anything that the defendant did wrong, but just the fact that it's hard to identify someone who's looking at you right in the face? I mean, as I read through this, I see bits and pieces of maybe different arguments. But one way to look at this could be that the prosecutor was saying, you know, it's hard to look a guy in the eye and say you're the one who did it. It may be to answer a question from a lawyer, but to actually have the person you're identifying look you right in the eye, that's sort of an uncomfortable, intimidating thing. Wasn't that one of the things the prosecutor was saying? One, but not all of them. I mean, one of the things he said was that, but he also said when asked – Would that have been improper for him to say that? Yes. Would that be an improper inference for him to say? Yes. And I think the reason it is improper is because it infringes upon the defendant's right to represent himself. If that was the rule, then every time the defendant represented himself, the prosecution could argue, oh, the witness is intimidated because the defendant is representing himself. That would – it's like heads you win, tails you lose. Well, that was – that's not really the case here because we have a, like I said, an unusual situation. But here's what I think – I just want to make sure what your complaints were. The first one was about the initial closing where the prosecutor asked about – the defendant was asked about whether he had police reports at home. These reports he acknowledged he had in his presence, which included Gordon's name, his address, phone number, place of employment, where his girlfriend lived, her name. Some of that was inaccurate. No question. He told you he didn't live at his home alone. He lived with his mother and his brother. That's all true. And then here's where your life experience and common sense come in. Gordon had to sit there and confront him. And then he said Gordon had to sit there and answer questions put to him by the person who participated in the armed robbery with a loaded gun, looking at – looking out at who knows who. Now, that's the first batch. The next batch is you heard him from the witness stand, Mr. Gordon, and he sees the man that he looked at, the man who said, turn around, the man who prevented him from running, asking him, am I the guy that robbed you? You see, folks, that's a tough, a very difficult position to be in. Gordon, a West Sider, West Side guy, defendant's here, defendant's family, so that's what he did. Defendant confronted him himself, acting as his own lawyer, confronting him, almost suggesting an answer to him. Difficult position, folks, for Ted – Tedman Gordon. Then later in rebuttal, the prosecutor said, you are the masters of the evidence now. You have the power and you have the power to say, and we submit to you that that's intimidation, that Tedman Gordon said the man did not rob him. You have control now. Would that be the sum and substance of what you're complaining about? You're missing one thing. All right. Which – what is it? He said – before he said the thing about the jury having control over the evidence, he said Chapin had control over the evidence in the case. Oh, okay. And that Tedman Gordon's testimony – Is that a reasonable inference or no? If you're using it to say that because Chapin had access to discovery, he intimidated Gordon, no. No. I'm just saying, is there a reasonable inference that Chapin had the police reports? Yes. Chapin said he had the police reports. All right. Okay. Mr. Richards, before we let you sit down, I just want to touch on the argument that the court abused their discretion in not giving the defendant another bite at getting another attorney. I counted it up. There was seven different lawyers over a four-year period thereabouts. Is that correct? Yes. At what point is it an abuse of discretion for a judge to say enough? Well, that's a hard question to answer. That's why I asked. It's a hard question to answer, but, again, I like to put that together with the fourth issue because on May 29th, he became his own lawyer. Is the fourth issue the one about asking for continuance for witnesses? Correct. Because we can't find that in the record. We can't find any request for a continuance to subpoena witnesses. I've read the record. I cannot find it. Well, I started to – Your citation is absolutely incorrect, so maybe you can supplement. Well, I would certainly try to supplement. When did he ever ask to have a continuance to subpoena witnesses? Well, my memory is that he mentioned to the judge that he needed time, and he mentioned specific people, Perry Gatherings. There was a colloquy in which he was asked. Well, in Luther Spence as well, he asked Perry. No, Luther Spence is an attorney. Perry Gatherings is a witness. Okay. We're on two different subjects. Okay. The subject of the witness is he's asked in open court, and this is either May 29th or a few days later. He says, okay, you're your own attorney. You have to do certain things. They have a colloquy about discovery. They also ask him who his witnesses are. He says that he has an alibi. He mentions Perry Gatherings as an alibi witness. And said he will be here. Right. And on the day of trial, he says my witness isn't here. When did he ask for a continuance to subpoena witnesses? That's what I need to know. All right. Well, he asked for a continuance in general on the day of trial. He's obviously not answering ready for trial, and he mentioned that his witness wasn't there. All right. Well, let me ask you something. The day before, he was asked three times, are you ready for trial? He said, yes. The judge said, do you have your witnesses subpoenaed? And he said, no. I think he then said something like, they'll be here. But then the judge said, if they are not here, are you going to be ready? And he said, that day, I'm going to be ready whether Terry Gatherings and the summer school teacher are here. So if we even accept or find somewhere in the record where he said, I want a continuance to subpoena these witnesses, if we find it, okay, how do we say that the judge abused her discretion when he said three times, I'm ready, and if they aren't here, I will still be ready? How is that an abuse of discretion? Well, I think it's an abuse of discretion because on the next day, when the case was set for trial, he was obviously – No, it was set for trial that day. I know, but the next day of the trial, as we started, and it was the next day that he brought up Luther Spence and another last-minute attempt to get an attorney. And also at that – Can a defendant or defense attorney reasonably request a subpoena or a continuance for witnesses after the case has been set for trial for almost four years? Can a defense attorney even get a continuance and argue that the court's not abusing her discretion? You've touched on the reason why the court was abusing her discretion because the difference is that when he brought up the witnesses, she said you've had four years to gather witnesses. But he had only been his own attorney since May 29th. So, yeah, if a new attorney came in on May 29th and said, I need time to subpoena witnesses or gather witnesses, that would have been granted. At this point, she was – Well, on May 29th, where's the timeframe that doesn't permit someone to get a subpoena and subpoena the witnesses for June 9th? Where's the timeframe that that doesn't allow for a subpoena to issue? Well, I think it wasn't even May 29th. I think it was a few days later when he mentioned his witnesses. But that's 11 days. So if on the day of trial he says, by the way, my witness isn't here, I think that in any ordinary case, had he been a licensed attorney, the question would have been, okay, do you have a lender subpoena? Do you want a warrant to issue? Do you want a rule to show cause, et cetera? And this was particularly damaging because – Isn't that what the state actually did the day before? They asked for a rule to show cause or something because they didn't have a witness? You bet. Wasn't that what their problem was? Yes. Okay, so are you telling us that if an attorney asked for a continuance to get a witness and he'd been representing a defendant and he told the court the day before, I'm ready whether they're here or not, that that would have been an abuse of discretion? If the defense attorney had done that the day before. Well, if the defense attorney had said something like, yes, I will be ready regardless. Yes. But if he said on the next day, no, I expect the witness to be here, I think I need a continuance, I need to have a rule to show cause, I think that would have been granted to an attorney. And it was particularly damaging in this case because even though Darnell Chaffin never injected the name of Gatherings into the case, the prosecutor cross-examined him about it and said, where's Gatherings? And that was totally, I think, improper and flowed out of the prior mistake. I would also say that throughout the rulings of Judge Walsh, apparently there's a sort of subtext of the supplemental call and how since the case is on the supplemental call, things can't be done in a certain way. That term has no legal significance. For the procedural reasons in points three and four and for the substantive reasons in point one and two, we had asked that Darnell Chaffin's conviction either be reversed outright or it be remanded for a new trial. Thank you. Thank you. Thank you. Mr. Connors? May it please the Court, Counsel, my name is Matthew Connors, on behalf of the people of the State of Illinois. I'd like to begin by addressing the first argument raised by the defendant, which really does hinge upon this whole notion of inferences and intimidation. What's the basis that they had to ask these questions? The basis is that the victim in this case was brought up by the defendant in an opening statement and he said, I will tell, I have statements from this victim. He says, I'm not going to, he's not going to identify me. From the very first thing the jury heard about this case, defendant said, I have proof that this victim is going to take the stand and he has not identified me. And lo and behold, that's exactly what happens. So you're saying that the inference then is appropriate because the defendant knew ahead of time that the victim would not ID him. Yes. So therefore, there was clearly some contact between the defendant and the victim. Is that what you're saying? Not necessarily contact between the victim. We do have a... How did he know that? Well, there was a representation that was made by the defendant when he was acting as his own attorney, I believe on June 3rd, when he did tender discovery. And at that point, defendant said, I have an investigative report where he says it wasn't me. So we know that at a minimum, the investigator spoke to the victim and that provided the defendant with the basis to say, I know he's not going to identify me. Do we know anything about the investigator? Do we have GPRs that say this? Do we have anything that indicates that this was a legitimate statement from the victim? We have the... We do know that the defendant had GPRs. That was one of the things that did come up. However, this statement was done by, I believe it was Attorney Lewis, although the defendant later on says it was done by co-defendant Johnny Velazquez's attorney. So we know that this was a defense investigator who interviewed the victim, and we know that the... Why wasn't that report tendered? Because it was defendant's report, and defendant did not tender that report until June 3rd. Well, what does that report say? The report is not in the record. That was not introduced at trial. That was not part of the record as made by the defendant on appeal. So we know that there is... But you believe the record supports that there was an investigator's report in this case that was either never tendered or it was tendered and it's not made part of this record on appeal. A defense investigator's report. He explicitly refers to a defense report on two occasions.  Where someone was actually examined as a complaining witness. Yes. And in that report, it says that the complainant will not identify the defendant. Yes. Mr. Connors, if that's the number one issue for the defense, don't you think that would be an important document for the appellate court to be looking at? Yes, if the defendant prepared... Why isn't it in the record then? Again, I do not know if that document was ever brought before the circuit court. I know that the defendant said, I have this report. The defendant said he had school reports. The defendant had a number of pieces of paper which had not made its way into this record. And when did he say this? I believe that the reference is on... In his opening statement. In his opening statement and prior to trial. Yes, prior to trial. Either he or his lawyer was aware of this information. The statement was made by... On 6-2-14, there was a statement. The defendant gave the people a copy of his summary that a private investigator did with the victim that the ASA was unaware of. The defendant told the ASA there was additional discovery from Attorney Lewis that he has not brought to court. So we know as of the 2nd of June... I guess my question is, did the ASA know the contents of that report? And if they did, why isn't the state seeking to supplement the record with that? Because it refutes the entire issue that the defendant has brought forth. Because I don't think that the ASA was aware... I don't think that the record bears out that the ASA actually got a copy of the report. Okay. So... Oh, go ahead. My initial question was, what's the basis for the ASA to be making this inference? And you said it was this investigator's report that the defendant had. Yes. But now you're telling me, wow, they didn't really have it. No, I'm saying the defendant makes a representation. So we know from the defendant's representation that there is a report. He gave something to a prosecutor. We don't know what it was. We know this is what the defendant proposes to say what it is. But in his opening statement, he tells the jury that the guy is going to come in here and he's not going to identify him. Yes. The defendant's opening statement says, you here, it wasn't me. Okay. So he knew in advance that this was going to happen. And he was referring specifically to... To Victor. Gordon. Yes. Not to his co-defendant? Correct. So now our assumption is the ASA, based on the statement of defendant, could make a proper inference that the defendant had the victim's name and his place of work and his address and his phone number. And he could make that appropriate inference based on the defendant's statement in his opening statement? That is correct. Okay. And it's not just a question of inference. I would like to know if Defense Counsel cited, for example, the People v. Mullin case before this Court and repeatedly throughout this brief. And the Mullin Court specifically says that common enclosure argument is proper if it is a, quote, fair and reasonable inference from the facts and circumstances provided. So the line put forth by the defense that we would need to get the victim on the stand to say, I'm intimidated, is not the legal standard. We don't need to say somebody is actually suffering the intimidation. It kind of defies logic to assume that a person is going to say, I'm being intimidated, and that's why I'm testifying in the given fashion. The record clearly demonstrates that Tedman Gordon was, in fact, a, not necessarily a hostile, but he wasn't completely willing to go forward. There was a willingness to show cause, as Justice McBride noted. Was it for him? Yes. It was for him. Oh, it was for him. I knew that somebody didn't show, but I wasn't sure. Yes. And the prosecutor did later on explain that Gordon was late coming to court that day and went to a different courtroom, so that's why the case was continued from then on. Well, there's no evidence in the record that that had anything to do with it. The jury was never in any way alerted that the case was continued because Mr. Gordon was there and it wouldn't have been. That is correct. Also, I'd like to touch upon the representation made by defense counsel about the cross-examination of the victim. Defense counsel said that this was an open-ended statement which justifies an acquittal. On page 191, this was actually a direct quote. Well, I want to know, can you identify me as the guy who stood behind you with the white guy who robbed you of $840? No. Huh. No. No. You weren't the guy. I wasn't the guy. That's it, Your Honor. This wasn't an open-ended question. This is a pointed question, and defendant, by virtue of the fact that he said, that's it, Your Honor, defendant thought his day was done. He saw the person who he assisted in the robbery say, you can't identify me, I'm done. Wasn't he just saying he was concluded with his examination? I would think that until the next case, he says, are you going to recall him? And the defendant's reply is, oh, no, no, no. While the record cannot be construed with such emotional imbalance, it seems a logical inference that a defendant who gets out, what he believes is the key piece of evidence, and then says, oh, no, no, no, I'm not calling him back again. Well, that is pretty good evidence, the victim saying it's not him. I think most defense attorneys would sit down with that. We would do that. Yes. Yes. That's cracking up on them. It is. But, again, it does tie into this notion that the defendant was at least expecting that this would be the response. And defense counsel is correct. How does it show that he was expecting that response? Because you do have a defendant in opening argument telling the jury, I know that he hasn't identified me. And then he goes directly to that identification and says, I don't know. Is that what the prosecutor pointed to in the closing argument as evidence of intimidation, what he had said in the opening statement? The prosecutor specifically said, it's hard to look at the person who's in front of you. If you could answer my question, did he reference the opening statement of the defendant in his closing argument? Not directly in the opening close. And then rebuttal close, again, returns to this, and the prosecutor again. In the context of closing argument, the question is always, can the prosecutor respond to something which invites that response? And when you have a defendant say, I got this guy to say that it wasn't me, to deprive the prosecution from the opportunity to explain why that would have come out has never been held as standard in Illinois law before. But has it ever been held in the law before that you can accuse a defendant of intimidation of a witness without any evidence of it? What evidence of intimidation is there? We have an inconsistent statement. We have knowledge and an admission the defendant had the means and the information to contact this victim. So again, this doesn't have to be direct. Even the defendant's cases say, is this a reasonable inference from the record? There doesn't have to be contact to suggest or infer that someone is afraid to testify. You don't have to contact the person to intimidate them. Right. It's just the information. I mean, there's no requirement that this person was actually, you know, the door was knocked on and somebody came and said, if you come to court, you're in trouble. That's not, I mean, that's certainly one horrendous way to intimidate. But I wouldn't say that this, you know, this covers the entire spectrum. I mean, I think the prosecutor argued that think about it yourselves. Suppose if you're sitting up there as a victim who had been robbed, and now you're facing your antagonist. I don't think it's the everyday garden variety cross-examination by a defense attorney. It definitely is not. But if it's error, and perhaps it is, what is your response to the plain error argument that this was closely balanced? It's the people's position that this case is not closely balanced because if you look at the evidence submitted by the defendant, his theory of the case was a subsequent recantation of an identification somehow trumps all the other identification. Now, we do know that we have co-defendant statement, and contrary to the defendant's representation, in the record on page 106, the jury was charged with considering co-defendant statement as substantive evidence. They were. Yes. So it was substantive. Yes. All right. So that's just more evidence that goes on in the pie. Yes. But even assuming it was used for impeachment, let's take a look at co-defendant's testimony. Co-defendant says everything happened the same way that it did. He was involved in the robbery. He drove the trailblazer. They went in a different direction. And the only difference is defendant wasn't part of it. And for some reason, co-defendant had $820 as opposed to the $797 that were recovered. So co-defendant has created a tale which, even if you were to give any credence to it, is completely not borne out by the record. We also have the non-identification of the defendant, but we do have the victim saying, as a matter of fact, that there was a light-skinned person and a black man who stood behind me. I saw them run away. I saw them get into a car together. I called my uncle. We went to 3557 West Lake, I believe. I jumped out of the car. I saw them. So we have a narrative where this happened. So, anyway, we're getting to this plain error. And the plain error rule is that the error has to be plain and obvious. And if we're going with the first prong, it's got to be closely balanced. And then after we get to that, if it's closely balanced, then the burden is on the defendant to show that this particular error so impacted not so. But since the evidence was closely balanced, that the error alone may have tipped the scale so that the jury returned a verdict guilty because of this error. So what is your response? To suggest that an Indian's defense attorney has now kind of backed away and closed the argument, he can only point to the one paragraph preceding the line of the master of the evidence. The other comments were they discussed Tedman Warden being face-to-face with the person who was involved in the robbery. See, those are fair comment on a defendant who is, in fact, examining the victim. To the extent that you would put so much weight on something that we've debated for 20 minutes now, demonstrates that it's not such an overwhelming error that you would constitute plain error. Mr. Connors? Yes. I'm sure you're familiar with the record. Yes. Have you found any date anywhere in the record where either a lawyer or Mr. Chafin asked for a continuance so that he could subpoena Terry Gatherings, if that's his name, and then his teacher? Terry Gatherings, Ms. Matoya-Marsha, Johnny Velazquez, and John Edward Byrne were all mentioned as prospective witnesses. Defense counsel referred to a statement made on June 3rd. Again, trial did not begin until June 10th. So it was a week before the trial where he said, I'm going to call these people. I need to ask how to put them under subpoena. The circuit court then says, state, will you let in Mr. Velazquez? And they said that they will do. The next court date is June 9th. On June 9th, defendant answers rhetoric. When asked if he's going to proceed without his witnesses, he said he would go forward if they don't show. He said that Terry Gatherings wasn't present, but he was downstairs parking his car. He hadn't found a parking spot. And as you correctly commented, the circuit court- Well, all I'm asking you is, is there any place that you found in the record where anybody said, could I have a continuance so that I can subpoena these witnesses? That's all I want to know. Because if it's not in the record, it's not in the record. If it is in the record, that's fine. Then I'll consider, I think we should consider the issue. If it's not in the record and there's never been a request to subpoena witnesses, then the issue is clearly forfeited. So I just wanted to know if, you know, I'll look at the record again in its entirety and I'll look and see if there's ever been a request where somebody said, Judge, could I have a continuance to subpoena these witnesses so I can present them at trial? That's all. We'll reread the record. We'll determine the answer to that. Last I'm going to touch upon the question regarding the continuance to request an attorney. Your Honor, there were actually eight attorneys which were- Oh, I missed one. I'm sorry about that. There was one that didn't appear in the record. Wasn't it Steve Wagner twice then? Excuse me? Counting Steve Wagner twice? No. The eight attorneys who had been referred to were Wagner, Kaplan, Lewis, Hill, Bianucci, Bryce, Dickinson, and Spence. Bianucci did appear. It's not that- Dickinson and Spence never appeared. They never appeared. But again, this refers to attorneys who were of record that this defendant purported to have either talked to or attempted to make arrangements with. Or discharged. Or discharged. Thank you, Your Honor. No further questions? Thank you. Mr. Richards? Yes, Your Honor, just briefly on a couple of points. Even assuming, and I'll assume this even though there's nothing in the record, that the witness had been interviewed and the witness had said before, I am not going to identify Mr. Chapin. And Mr. Chapin knew it. That does not establish intimidation in any manner, shape, or form. It's exactly like the case in People v. Wray where defense attorneys went to interview witnesses, witnesses refused to talk, as was their right, and then that was commented on in closing argument to show that the witnesses were intimidated. Was Wray decided on that sole issue? There were a couple of others. What were they? The other accusations against defense attorneys, as I recall, was that they were engaging in, let me just check, but those are also mentioned in my discussion of Wray. There were additional errors. However, in Fluker and particularly in Mullen, the only error. Well, here, let me just refresh your memory about Wray. In Wray, the reviewing court found error after an examination of the state's rebuttal argument, which revealed a litany of remarks so detuperative and inflammatory that they could only have created an atmosphere inimical to the even-handed dispensation of justice and thus resulted in prejudice. The court also observed that the prosecutor repeatedly attacked the professional integrity of defense counsel, charging him with lying some 16 times, as well as with trying to confuse and intimidate the jury in an effort to win defendant's acquittal. The prosecutor also misstated the law regarding the defendant's presumption of innocence. The court also pointed out to the prosecutor's comments, and this is one that was kind of significant, about the defendant's failure to testify. Insinuation that additional state evidence was excluded by defendant's objection. Intimation about the defendant's criminal history and suggestions that the defendant was manipulating his constitutional rights to avoid conviction. In addition, the prosecutor argued that witnesses chose not to speak with defense counsel to testify because they were afraid of the defendant and that the defendant was working through the lawyers to intimidate you in this courtroom. Then the Wray Court also based its decision on multiple egregious and improper comments made by the prosecutor in rebuttal. So there was a lot going on in that case. I'm just pointing it out. And there was as much going on in this case when you remember that in this case the defendant was his own counsel. So to accuse the defendant, his own counsel, of threatening the sole witness against him on the key issue in the case can hardly be considered anything other than plain error, particularly in this case. Well, there isn't any word about threats. That's never mentioned. They said intimidation. Well, what does intimidation except threats? Well, intimidation has a very broad definition. I really believe it does. I don't agree that intimidation means that you went out, called him on the phone, sent an investigator, or did anything like that. Intimidation can be much more subtle. So I think it has a very broad meaning, and I don't think it means that they went out there, knocked on his door, and made any threats of any kind. You don't have to threaten someone to intimidate them. Does it change your argument at all, the State's position, that they did have a basis, in fact, for asking this, and the basis was that the defendant injected this into the opening statement, saying, I have an investigator's report where the victim won't identify me. Does that change anything? No, it makes it worse. Why? I'll tell you why. It makes it worse because they knew, under that inference, that, in fact, an investigator had legitimately gone out to the witness with no suggestion of intimidation, apparently an investigator hired by the prior attorneys, and the witness had given a statement saying that he was not identifying my client as the... So they knew that there had been legitimate contact, not illegitimate contact through looking through discovery or some nefarious scheme or some atmosphere of some subtle intimidation never proved and never demonstrated by any fact. It makes it worse. I don't think the comments here were ever directed at an investigator. I really don't. I think the comments were strictly devoted to the idea that, use your common sense, what would it be like if you're sitting up there and you're suddenly facing this antagonist in your life? I disagree, Your Honor. And the one reason I disagree is that the comment about intimidation comes directly after the comment about control of the evidence and saying the jury had control of the evidence, which is exactly the same argument made in Fluker. You can't let these people run the courtrooms. They don't run it. You run it. You can't let them intimidate witnesses and so forth. And intimidation in the judiciary definition means instilling fear, and it has to mean instilling fear by some means. Either way, you have the plain error argument that you have to overcome. I do, and in this particular case where the evidence was closely balanced, I think I overcome it because the evidence was closely balanced. And the State has never argued in one word in their brief the evidence was overwhelming because it wasn't. It was closely balanced. Did they agree with you that the evidence was closely balanced? No. But they did not say the words overwhelming, which they often do in my experience when they think they have a basis for it, because they didn't. And it's to their credit that they didn't say that. And that's not the standard in any event. Not in a plain error case. It's not. There's no case that has ever suggested that. No. That is a standard for a harmless error case, not a plain error case. But in any event, it's clear that the evidence is closely balanced, and when the jury sent out a note saying it was split 6-6, they gave more evidence for that. Thank you. Mr. Richards, I just want to ask you one final question. If we can't find this colloquy you've been referencing, would you agree you forfeited any argument in that regard? Well, I was just looking at my brief to say exactly what I said in my brief. Okay. And what I referenced in my brief was that on June 3rd, so June 3rd is like not 11 days before trial, but more like 6 or 7. I think the trial was at the 9th. Okay. The court discussed with Chapin's defense and potential witnesses, Chapin indicated he was going to call Terry Gatherings as a hallway witness, but they was not under subpoena, and he indicated. And at that point, when he just says, listen, Gatherings is not under subpoena, already the court is hostile. If an ordinary attorney had said, listen, I got a witness, we have a trial in 6 days, my witness is not under subpoena, the court's response was, you have 4 years to gather witnesses. Okay. That's extremely unfair. I'm not really asking you that. I'm just saying if we can't find your claim that there was a request for a continuance to subpoena witnesses, is this an issue that's forfeited or not? It would be, but I think if you look at volume 2, 610214, page 3, you'll find what I'm talking about. And what day is that? That would be June 10th. Okay. And so you're saying now that the request for a continuance to subpoena witnesses appears on the record on that day? He says that he's not ready for trial because he's waiting for a couple of witnesses to appear. Okay. Is that when he's asking for a continuance? I think that would be fairly contrued as a request for continuance. I'm not waiting for trial. So this has become your argument is that on June 10th, he made a request to subpoena witnesses and was requesting a continuance that was denied. No, what he was saying was he was not ready for trial because he's waiting for a couple of witnesses to appear. I think in reasonable inference when you're dealing with a pro se client, that's a request for continuance. And I'll stand by that. All right. Thank you. Thank you, Mr. Richards. Thank you, counsel. The case was well briefed and well argued, and we will take it under advisement.